IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EVELYN ROMERO
and RICKY ROMERO,

        Plaintiffs,

vs.                                    CIVIL NO.  08-257 LFG/RLP

CITY OF SANTA FE, ROBERT
VASQUEZ, and GARY JOHNSON,

        Defendants.

## ORDER GRANTING IN PART AND DENYING
## IN PART PLAINTIFFS' MOTION IN LIMINE

THIS MATTER is before the Court on Plaintiffs' Motion in Limine [Doc. 77]. The motion is fully briefed. [Doc. Nos. 90, 93.] After careful consideration of the pertinent law and pleadings, the Court determines the motion should be granted in part and denied in part as described below.

### Information on Ronnie Romero Subsequent to December 20, 2005

Plaintiffs seek to preclude introduction of evidence at trial concerning events affecting Ronnie Romero ("Ronnie") which occurred after December 20, 2005; specifically, Ronnie's death in jail from a possible drug overdose in September 2008.[1] [Doc. 77, p. 1.]

The underlying facts pertaining to this lawsuit are fully outlined in the Court's Memorandum Opinion and Order, entered May 13, 2010. [Doc. 94.] The pertinent time frame with respect to Plaintiffs' claims generally is August 2005 to January 2006.

Defendants argue that evidence of Ronnie's overdose death in September 2008 is relevant to confirm Det. Vasquez's belief that Ronnie's drug use posed a serious risk of harm to Plaintiffs

---

[1] Media newspaper accounts report Ronnie Romero died of a drug overdose, and at the time of death, a balloon with black tar heroine was found in Ronnie's body cavity.

and others in December 2005. Defendants argue that the 2008 information is "clearly relevant, regarding the knowledge and actions of Det. Vasquez on that day [meaning December 16, 2005]." [Doc. 90, p. 2.] Defendants further state that if a determination is made that Det. Vasquez removed Plaintiff Ricky Romero ("Ricky) and Marcos Romero ("Marcos") from the family home in the period of December 16-20, 2005, Defendants will present evidence showing Det. Vasquez's actions then were justified by his knowledge of the facts and history of calls to and reports of the Santa Fe Police Department's ("SFPD") that Ronnie was a drug user and abusive. [Doc. 90, p. 2.] Defendants also argue that if Ronnie died of an overdose while in jail in 2008, this evidence is relevant to Defendants' arguments concerning Det. Vasquez's knowledge and actions in December 2005. [Doc. 90, p. 2.]

Undoubtably, Defendants will introduce evidence from August 2005, concerning communications between the Romeros and the SFPD or Det. Vasquez concerning allegations that Ronnie was using drugs and was violent during the 2005 time frame. Assuming a proper foundation is laid and the evidence is properly authenticated, that earlier evidence concerning Ronnie will be admissible at trial.

However, the evidence concerning Ronnie's death as a result of an overdose while in jail in September 2008, sheds no light on Det. Vasquez's beliefs or actions taken almost three years earlier in December 2005. Even if minimally relevant, any probative value is substantially outweighed by the danger of unfair prejudice to Plaintiffs. Fed. R. Evid. 403. Thus, the Court grants the motion in limine to exclude evidence concerning Ronnie's alleged overdose death in September 2008. The parties are allowed to present evidence of Ronnie's death in 2008, without mentioning that he died in jail or of an overdose.

Plaintiffs request more generally that all "events occurring after December 20, 2005" should be excluded from trial because such evidence "would not bear on suspicious, beliefs or expectations on December 16, 2005." [Doc. 77, p. 1.] While perhaps true, the Court will not make its rulings in a vacuum without knowing what evidence, concerning events after December 16, 2005, Plaintiffs seek to exclude. Thus, any decisions about admissibility of evidence concerning other post-2005 incidents will be made at trial.

## **Grand Jury's Failure to Indict Ronnie**

Plaintiffs argue that information that a grand jury never indicted Ronnie for the 2000 murder of his younger brother Robbie should be admitted to "even the playing field." Defendants intend to introduce evidence that Det. Vasquez was serving subpoenas on December 16, 2005, to secure attendance of the Romero family at grand jury proceedings wherein Ronnie was the target of the proceedings. There are transcripts of recorded telephone calls between Det. Vasquez and members of the Romero family or friends during which Det. Vasquez discussed the grand jury proceedings in relation to the subpoenas he was serving on the Romeros on December 16, 2005.

Information that a grand jury did not indict Ronnie for the murder of his younger brother Robbie is not relevant to the issues of whether Det. Vasquez illegally removed Ricky and Marcos from the home on December 16, 2005, or whether Det. Vasquez had reasonable grounds to believe that the Romero children were in danger. The facts leading up to the grand jury proceedings are relevant to show the information Det. Vasquez had prior to December 16, 2005. The outcome of the grand jury proceedings, on the other hand, is irrelevant. Plaintiffs' assertion that this information should be admitted to "even the playing field" does not constitute grounds to admit it. Therefore, the Court will not allow evidence of the grand jury results to be presented at trial.

**Recorded Statements from CH1, CH2, CH5 and CH6**

According to Defendants, counsel for both parties agree that these audio tapes of conversations in August 2005-December 2005 are authentic and do not require additional testimony as to foundation or authenticity. The questions raised by Plaintiffs' motion are whether the entire tapes will be admitted into evidence or whether "snippets" of the tapes that might be deemed unfairly prejudicial or irrelevant will be excluded.

Plaintiffs seek to prohibit Defendants from introducing the entire tapes made by the SFPD in the time frame of August 2005-December 2005, because Plaintiffs assert the tapes are too lengthy (between four and five hours), do not pertain to the disputed facts, provide irrelevant discussions about the grand jury proceeding, and could be prejudicial to Plaintiffs.

As an example of possible prejudice, Plaintiffs identify part of a recording on CH5, where Plaintiff Evelyn Romero ("Mrs. Romero"), having been served with a subpoena, was discussing the grand jury proceeding against Ronnie with Det. Vasquez and Lt. Johnson. She allegedly asked the officers: "Can they make him a deal? Will they make him a deal, if they charge him, like 'Ronnie, where's the body' . . . ." [Doc. 77, p. 3.]

Plaintiffs claim that SFPD already released this "snippet" to the media in the spring of 2008. They argue that Mrs. Romero's conversation has no bearing on whether Det. Vasquez allegedly removed Ricky or Marcos from the home or whether Defendants improperly entered the Romero house on December 16, 2005. Moreover, Plaintiffs assert these comments by Mrs. Romero would be "very prejudicial," and might even lead jury members to believe that Mrs. Romero knew what happened to Robbie.

Defendants argue that Mrs. Romero's statements (as identified above) go to questions of her credibility, are relevant as to Mrs. Romero's professed dislike of law enforcement officials, and are evidence of impeachment. Defendants further state they have not determined if they will try to admit Mrs. Romero's "damning statement" at trial.

It is not clear from Defendants' response what they intend to try to introduce. Neither Plaintiffs nor Defendants have provided the proposed "snippets," and the Court is unable to determine, at this juncture, their admissibility.

The Court denies the broad request to limit evidence, but as with all proposed evidence, it must meet the relevancy standards under Fed. R. Evid. 401 and withstand Fed. R. Evid. 403's balancing test. Thus, at this time, Plaintiffs' motion in limine concerning the recorded statements is denied.

### Ricky Romero's Deposition

Plaintiffs also seek to prevent Defendants from attempting to impeach Ricky with his deposition statements as they relate to tape recorded statements Ricky made on August 5, 2005 (CH2). In support of their motion, Plaintiffs explain that on August 4, 2005, Mrs. Romero called "911" because Ronnie was acting strangely and both she and Ricky believed Ronnie was using drugs that night. The next evening, August 5, 2005, Det. Vasquez interviewed Ricky and recorded a statement from him regarding Ronnie and past events. The tape (CH2) was produced but not before Ricky's deposition, as counsel had all agreed would be the case. Thus, Ricky's deposition was terminated when defense counsel realized that another tape (CH2) had not yet been produced.

It appears that during his deposition and in his subsequent affidavit (attached to Plaintiffs' reply in support of their motion for partial summary judgment on liability), Ricky contradicted

statements he made in the August 5, 2005 conversation with Det. Vasquez.  For example, when deposed, Ricky denied ever having been afraid of Ronnie, but on the August 5, 2005 tape, he stated he was afraid of Ronnie.  He now denies being aware of Ronnie's drug use when he previously spoke of Ronnie's drug issues; he earlier spoke of threats made against him and others, but now denies those statements.  Plaintiffs contend that Ricky, who was just 16 years-old in August 2005, should have been allowed to refresh his memory before his deposition, that was taken much later.

Plaintiffs do not seek a "blanket exclusion" of Ricky's statements on CH2, but contend his deposition statements should not be used to impeach him under the circumstances.  In other words, it might be concluded that Plaintiffs seek the exclusion of only those statements during Ricky's deposition that are prejudicial to him.

Rule 32(a)(2) provides, "Any party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence."  In this case, Ricky Romero is a party, and under Rule 32(a)(3), "An adverse party may use, for any purpose, the deposition of a party . . . ."  Thus, the use of Ricky Romero's deposition is specifically authorized by Fed. R. Civ. P. 32(a), and may be used for any purpose, including impeachment.

Additionally, the federal rules, specifically Fed. R. Evid. 613, allow a witness to be examined concerning prior statements.  "In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown or its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel." Fed. R. Evid. 613(a).  The pertinent rule further allows introduction of extrinsic evidence of a prior inconsistent statement.  Fed. R. Evid. 613(b).

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(b)(2).

Thus, it is abundantly clear that, as a party, Ricky's deposition may be used by Defendants for any purpose, and that the Rules of Evidence allow the use of prior inconsistent statements, either as extrinsic evidence or for purposes of impeachment under Rule 613.

Accordingly, Plaintiffs' motion to exclude the use of Ricky's deposition testimony is denied.

## Andy Dean's Statements

Plaintiffs generally request that hearsay statements [by anyone] not be introduced into evidence through Det. Vasquez's police report or through testimony at trial by Det. Vasquez. Plaintiffs provide further examples of such statements by identifying remarks made by Ricky's aunt, Andy Dean ("Dean"). Plaintiffs argue that statements of third parties within Det. Vasquez's police report are hearsay and should be excluded. Plaintiffs further explain that if Dean testifies at trial, the testimony itself might be admissible as she would be subject to cross examination.

The federal rules define hearsay as "[a] statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Statements which are otherwise excludable as hearsay may be admitted if they come within one of the multiple hearsay exceptions outlined in Rule 803.

The Dean remarks are not hearsay and are admissible if they are not offered to prove the truth of the statements, but rather, to provide evidence of what Det. Vasquez knew or heard on December 16, 2005. The Court concludes that Dean's statements are admissible to show what

information Det. Vasquez had when he concluded that Plaintiffs, especially Ricky, who had earlier professed fear for his safety due to Ronnie's erratic behavior, might be in harm's way from Ronnie.

Accordingly, Plaintiffs' motion in limine to exclude the hearsay statements of Andy Dean is denied.

For all of the above-stated reasons, Plaintiffs' motion in limine in granted in part and denied in part.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge